SANDY WILLIAMS v. THE STATE.

No. 2381. Decided June 11, 1902.

**1.—Assault to Murder—Self-Defense—Provoking Difficulty—Charge.**

On a trial for assault with intent to murder, where the evidence for the State showed that defendant went to the store of prosecutor and made the assault upon him with intent to kill him; and defendant's evidence was to the effect that he acted solely in his self-defense, defendant was entitled to a charge upon self-defense; and a charge upon provoking the difficulty was erroneous and should not have been given under the facts.

**2.—New Trial—Separation of Jury.**

Where a separation of the jury is set up as a ground for a new trial, and the affidavits pro and con as to the matter are directly conflicting, the overruling of the motion will not be held erroneous.

**3.—Same—Newly Discovered Evidence.**

A new trial will not be granted for newly discovered evidence which is unimportant and of an impeaching character.

Appeal from the District Court of Walker. Tried below before Hon. J. M. Smither.

Appeal from a conviction for assault with intent to murder; penalty, five years imprisonment in the penitentiary.

The case is sufficiently stated in the opinion.

*McKinney & Hill,* for appellant.—The charge upon self-defense and provoking a difficulty is an exact copy of such a charge in Johnson v. State, 66 S. W. Rep., 846, which was held erroneous and unauthorized.

*Rob't. A. John,* Assistant Attorney-General for the State.—If the jury had found as true the language used by appellant in calling Bukowski a son of a bitch and running his hand in his pocket as if to get his pistol as Bukowski was dodging behind the door, and then further found that Bukowski when he dodged behind the door, got his gun and advanced upon appellant as appellant swore, the issue of provoking a difficulty is clearly raised. The charge on that issue complies with that given in Levy

v. State, 28 Texas Crim. App., 203; and taking the theory of the State and the defendant, the court instructing them specifically upon the defensive acts in evidence, certainly presents the case in a condition where the jury could not have believed the defensive matter, and found the verdict they did. In other words, the issue was, was there self-defense or not? If the witnesses for the State were to be believed there was no self-defense whatever in the case. And if the witnesses for the defense are to be believed, then the matters defensive were so fully presented by the charge of the court that the incomplete charge on provoking the difficulty certainly could not have resulted in appellant's injury.

The State insists that the charge upon provoking the difficulty contains no vice, except in omitting to further amplify upon the principle by telling the jury that not only the intention to provoke the difficulty must exist, but appellant must have done some overt act which was reasonably calculated to and did provoke said difficulty. The issue of self-defense vel non is not raised by the evidence any more cogently than was raised in Rhea v. State, 37 Texas Crim. Rep., 141. And in that case a similar charge on provoking the difficulty was held to be harmless in its effect, because the court had thoroughly protected the rights of defendant in grouping the defense matter and telling the jury that, if they found them to exist, to acquit. The same status exists in the case at bar. Rhea v. State, 37 Texas Crim. Rep., 141.

DAVIDSON, Presiding Judge.—Appellant was convicted of an assault with intent to commit murder, and five years in the peitentiary assessed as the punishment.

Criticism is made of the court's charge on self-defense, as follows: "Unless you further believe from the evidence beyond a reasonable doubt that defendant sought the meeting with said Tom Bukowski, for the purpose of provoking a difficulty with the said Bukowski, with the intent to take the life of said Tom Bukowski, or do him such serious bodily injury as· might probably end in the death of said Bukowski, and if you so believe from the evidence beyond a reasonable doubt, then you are instructed that, if the defendant sought such meeting for said purpose, and with such intent, the defendant would not be permitted to justify on the ground of self-defense, even though he should thereafter have been compelled to act in his self-defense. But if he had no such purpose and intention in seeking to meet the said Tom Bukowski, if in fact you believe he sought the meeting with Bukowski, then his right of self-defense would not be forfeited, and he could stand his ground and defend himself by the use of such means of defense as the facts and circumstances indicated·to be necessary to protect himself from danger or what reasonably appeared to him at the time to be danger." This charge on provoking a difficulty, limiting the right of self-defense, is not a correct statement of the law as has been decided in many cases. Bearing upon this question, the substance of the testimony is to the effect that there had been ill will between the parties and threats were testified as having

been made made by each against the other. Prior to the difficulty there had been some altercation. Appellant passed in front of the store four or five times before prosecutor saw him at the rear end of his store, where the difficulty occurred. Just before the shooting, while appellant was standing near the rear end of the store, Bukowski requested him to pay the debt he was owing. Appellant cursed him as a God-dam son of a bitch, and ran his hand into his pocket as if to get a pistol, and said he would shoot Bukowski. Bukowski dodged behind the wall of the house to keep from being shot, and shortly afterwards looked around from behind the wall to see what appellant was doing. Appellant immediately threw his pistol down and fired, shooting Bukowski through the breast, which proved to be a very dangerous wound. The State's testimony shows that Bukowski was doing nothing at the time, and had no gun in his hand; and there was no one in the store except himself. Three weeks prior to this transaction, appellant was in Bukowski's store with a large gun, and upon being requested then to pay the debt, talked saucily to Bukowski, but promised to return the next day and pay him. Bukowski denied ever having any trouble with appellant prior to the date of the shooting, and never made any threat against him. Defendant's testimony was, that he was standing a few steps away from the rear end of Bukowski's establishment talking to a couple of women, when Bukowski called him. He replied he would be there after awhile, as soon as he finished his conversation "with the women." That Bukowski remarked, "If you don't come to me, I will come to see you," and walked into the store. Appellant went immediately to the back part of the house, where he could see in the store, and saw Bukowski returning with a gun; that he turned and ran until "he heard the gun cock behind him;" that he then turned, pulled his pistol and shot; that at the time he shot, the prosecutor had his gun to his shoulder in a shooting position, pointed at appellant; and that he shot to save his life. With reference to the gun, the State's testimony showed that there was but one gun in the house, and that it was an old shotgun and unloaded, and at the place where usually kept under the counter, up towards the front end of the house. It was found there immediately after the shooting and before the assaulted party had been moved or left the place where he was shot. At the time the gun was found under the counter, Bukowski was standing, or was at the identical spot where appellant shot him. After the shooting appellant ran away, but subsequently surrendered himself. Appellant had the right to a clear charge on his theory of self-defense. The question of provoking a difficulty was not an issue under the evidence. None of the witnesses put him in the attitude of provoking the difficulty. The State's testimony shows clearly an assault with intent to murder. He did nothing to provoke Bukowski to make an attack upon him. He went where Bukowski was and made the assault for the purpose of killing him. This is the State's case. Under the testimony introduced in his behalf, by his own as well as other witnesses, he acted in perfect self-

defense. The charge in regard to provoking a difficulty was not only erroneous, under the decisions, but it should not have been given.

There is a question raised on motion for new trial in regard to the separation of the jury. This was presented by affidavit and contradicted by the affidavits of the sheriff and two of the jurors. The contention is, that the jury became separated and mingled to some extent with the crowd at one of the adjournments of the court. Whether they talked to anyone or whether it was the jury simply passing through the crowd is not shown. The sheriff and two of the jurors deny in toto the separation of the jury. The court had the matter before him, and there is nothing in the record to indicate to us that his ruling was erroneous. There are also affidavits setting up newly discovered evidence, but in the main this is of an unimportant and impeaching character. For the error discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*